The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, please be seated. All right, we'll begin with our first case, United States v. Alicia. And Ms. Washier, when you're ready, we'd be pleased to hear from you. Good morning, Your Honor. Uja Boister on behalf of the United States. Taxes that seek to influence conduct are nothing new. That is what the Supreme Court said in NFIB when it upheld the shared responsibility payment as a tax. It got there by applying a functional test, one that looks beyond the statute's label, and one that it had borrowed from its bankruptcy priority context precedent. This court also applies a functional examination. It did so in New Neighborhoods, in Williams, and again in NRAY-CT. Let me just ask you a preliminary question, counsel. Assuming we are just purely arguendo, that we agreed with you that this was a tax. OK, just arguendo. Do we then need to get into the question of whether it's a tax measured by income or whether it's an excise tax based on a transaction? Do we have to resolve those questions if we arguendo to conclude that you were correct on the question of whether it should be called a tax? Yes, Your Honor. This court would have to decide whether or not this is a tax measured by income under 507-88A. It's also an excise tax on a transaction under 507-88E, but it would not be given priority if it were not either of those. All right, but the point is... Just a second. Let me just follow up on my question. The point is, are you saying that finding it's a tax is necessary but not sufficient? That we've got to ask whether it's a tax measured by income or based on an excise tax? That we've got to go into those questions? If I understand Your Honor's question correctly, yes. The court needs to answer two things. It needs to answer first whether this is a tax, something that the district judge did not do directly because it got straight to its assumption that it was not an excise tax or a tax measured by income, before this court can get to... But just to make clear, I understand what you're saying, but why is it... If it's a tax, why is it necessary to go into these other questions as to what kind of tax it is? 507-88 only grants priority to certain types of exactions, and it's those listed underneath 507-88. Okay, and those are two of the exceptions that grant priority for the tax, are the tax measured by income or an excise tax? Yes, Your Honor. Okay, so bankruptcy court just doesn't give priority to taxes across the board? There have to be certain specific taxes? That's right, Your Honor. Although this court did say in New Neighborhoods that the category excise tax on a transaction was meant to encapsulate all other taxes that weren't otherwise covered by other sections of 507-88. Okay, that's very helpful. Thank you. Can I ask you something about the Supreme Court's case? I use the word Sebelius. All those letters, I have to memorize the letters. It's easier. It's Chief Justice Roberts' decision in Sebelius when he's speaking for the court. In Part 2, he addressed the Anti-Injunction Act, and he made a couple of very interesting statements. There, he said the Affordable Care Act penalty was not a tax because Congress didn't label it as a tax. Congress had labeled a penalty when it wanted one and a tax when it wanted one within the same statute. And he said, Congress, however, chose to describe the shared responsibility payment imposed on those who forego health insurance not as a tax but as a penalty. And then he explained that Congress can do that even, and it says, even if that label were inaccurate, basically suggesting that we're going to bypass the CF and I functional analysis because if Congress chose to label it a tax, it was free to do so and have it treated as a tax. And then the whole analysis in that Part 2 goes on to say Congress cannot change the taxing powers for the court to decide, and it's a broader concept. And that's what they, of course, did for the constitutionality purposes, whether Congress would do it. But for purposes of looking at congressional statute versus a congressional statute, he said a tax is a tax is a tax, regardless whether it is a tax. Now, I know CF and I has this functional analysis, and if I had my druthers, that would probably be the much better jurisprudence. But this is a Supreme Court speaking more recently, and I personally see some tension between the CF and I case and the Sebelius case. But he says the Anti-Injunction Act, Affordable Care Act are creatures of Congress's own creation. How they relate to each other is up to Congress, and the best evidence of Congress's intent is the statutory text. And it said because the Anti-Injunction Act uses taxes and the Affordable Care Act uses taxes in some place and uses penalties, we're going to honor that. That's exactly what the court said. Then it came to analyze the taxing power conferred by the Constitution. And in that sense, it determined whether it could collect that penalty as a tax, and it said it could. But it always labeled that whole thing as for constitutional purposes. It says, it is true Congress cannot change whether the exaction is a tax or a penalty for constitutional purposes. And it underscored constitutional simply by describing it as one or the other. But for statutory purposes, Congress has full control. And in this case, of course, they labeled it a penalty and they labeled other portions of the tax as taxes. And the bankruptcy code labeled it as a tax. And so you match them up under Sebelius. You don't do the functional attack analysis when Congress labeled it, even though it may have been wrong. That's what that's what the court says. Now, you can persuade me the other way. That's my problem. And I'm just speaking for myself. But I must say, if we're going to read Sebelius as the last word from the Supreme Court on this subject, I have that difficulty. I don't quite know how to handle it. Your Honor, two points in response. First, when the Supreme Court got to that functional analysis that it applied for the constitutionality of the shared responsibility payment, it took from its bankruptcy priority precedent, CFNI and Sotelo. So it knew it was applying a functional test that it traditionally applied to bankruptcy priority cases. But the function of it, it picked a functional test because a functional test looks behind the label. But it did it for constitutional purposes only. It didn't transform the bankruptcy statute because it just happens to be that's where CFNI did the analysis and said you look structure. Seems to me the IRS is always taking the position that we look behind sham labels and look at function. My biggest problem is Sebelius itself. And the language they use is not a particular statute. If it's congressional creation and Congress labels it a penalty or labels it a tax, we follow that. That's exactly what part two says. And that was part of the court opinion. And then they come for constitutional purposes going to the power of the mandate and the penalty. And they said that power was authorized under the functional analysis. And they drew back on how to apply a functional analysis. But it did it for constitutional purposes in this case. And in part two, it seemed to say Congress can label it a tax. And it says even where that label was inaccurate. That's what the chief said. And are we supposed to ignore that? No, Your Honor. You're not supposed to ignore that for the Anti-Injunction Act analysis. It didn't say that. He said he made the distinction between acts of Congress and the Constitution. He laid out and he underscored constitutional. He said it is true the Constitution cannot change whether taxation is a tax or penalty for constitutional purposes. Because we're looking at the taxing power. But when we're looking at statutory enactments in which Congress has full control, we have to follow the labels. That's basically what he said. I understand the tension. I understand your argument fully. And I must say it's a very persuasive argument. But I don't know how to handle this stuff. I do. We're going to have to. That's our job. I'm just telling you the problem I face. When the dissent pushed the majority on its ruling as to the functional analysis and said you cite Sotelo, that's a bankruptcy priority case. That has nothing to do with our constitutional analysis. I understand. But see, all that does is give you the elements of a functional analysis. It doesn't tell when it can be used and when it can't be used. Back then, CFNI says you do do a functional analysis. But in Sebelius, they say you do the functional analysis for determining constitutional power, the taxing power. It said when it comes to statutory enactments, and they said these are creatures of Congress's own creation. How they relate to each other is up to Congress. The best evidence of Congress's intent is the statutory text. And if they label it a tax, the court said, regardless of whether it's a properly, we use it, call it a tax. They label it a penalty, we call it a penalty. And that language sort of says when we're looking at Congress's own enactments, applying one word to another statute, we follow. If Congress chooses to call it a tax, they can call it a tax. They'll call it a penalty. And it's a little bit more difficult in this case because within the Affordable Care Act, they did use the word tax and they did use the word penalty distinctly. And so if we're going to follow the labels, then in this case, a tax, a penalty is not a tax. Penalty is a penalty which is treated differently. Anyway, that's, I think roughly that's what the district court came out with. Sorry, I don't mean to take up all your time, but I wanted to say that I thought your point was that when you did go into the analysis, it's a walk like a tax and talk like a tax. And we're wedded to the functional analysis here. And you, whether you pay the SRP, you decide it right at the time that you file your tax return. You include it with your tax return. It's tied to household income. In other words, it walks like a tax and talks like a tax. And that's the functional analysis. And then the other point I thought you were trying to make is that the label of the Supreme Court's view that this was a tax was made in conjunction with the very point that we are concerned with here. And that is what is the SRP? It's not a general matter. It is what was the SRP? And you're saying, as I understand your brief, that when they address the question of what is the SRP, they said it's a tax. And my concern is that if we try to go off in the opposite direction, it's going to look to the Supreme Court as if we are essentially mounting a backdoor attack on the Sebelius case, which I had my reservations about. But once the Supreme Court has spoken, I feel more comfortable following the Supreme Court decidedly rather than giving the appearance that I'm mounting a backdoor attack of some sort on the ACA. That's what I thought you were saying. Am I correct? Yes, Your Honor. It walks like a tax. It talks like a tax. It is a tax under the functional test. Just quickly to respond to Judge Niemeyer's concern, if the Supreme Court wanted to overrule its bankruptcy priority precedent, it would have done so explicitly. It was confronted explicitly with its CFNI holding and its SOTELA holding. And instead of distinguishing it, in footnote 7, it says, just because this is a bankruptcy priority case does not mean we do not have to follow it. I think that is what lets us to conclude. This is a functional test that applies in both, which is why we think that NFIB or Sebelius is controlling here. I see I'm dipping past my time, but if you're... No, no, no. I understand that. And my point is the court did apply a functional test, but the court applied a functional test and it said it explicitly two or three times also in the part that addressed it for constitutional purposes. It says we do this for constitutional purposes. It did that deliberately. We're applying the functional test. We're determining whether Congress had the power to tax or to impose the penalty, and they call it a tax under the taxing power. But it clearly made a distinction and went out of its way to make the distinction, even emphasizing words, that we treat the taxing power interpretation under the Constitution functionally, whereas we're going to treat Congress's own enactments giving effort to its labels. And you say they overruled. I don't know if they overruled, but I do know Sebelius did not apply the functional test to congressional enactments, but did to the constitutional power. And that, to me, is something that we have to... That hurdle we have to overcome. So if we're going to be faithful to Sebelius, it seems to me we have to decide whether this is a constitutional question or a congressional enactment. That's the distinction. The functional test, I understand that test, and that was borrowed from earlier cases. And the truth be, if we're going to follow it, that's what I think we have to follow. Now, CF and I sits there as a well-reasoned opinion that comes before, but I don't see how that's consistent with saying we're going to abide by Congress's labels, regardless of whether the label is correct. If the Supreme Court hadn't recognized the traditional context in which it applied a functional analysis, I would agree with you, Your Honor. But it recognized that traditionally there are certain contexts, the constitutional one, the bankruptcy priority one, where it does look behind it. And this Court, as Your Honor just said, has also applied a functional test. In New Neighborhood, CT, Williams, this is a functional test that applies. We argue that this is a tax measured by income. The Third Circuit recently dealt with this very issue in Sysakorsky, and it said you cannot get to the shared responsibility payment amount without knowing a taxpayer's income. For that reason alone, this Court can reverse the District Court because this is a tax measured by income for 507-888 purposes, and it should be given priority. If the Court wants to end there, it can. We think it could also reach the issue of whether or not this is an excise tax on a transaction. It does not have to. If it does, we think it should so conclude. Well, if we found it was a tax, then we'd have to decide whether it's a tax as described in the bankruptcy code, wouldn't we? Yes, Your Honor. And if we find it's not a tax, we'd not have to reach that. That's right, Your Honor. Yes. This is also an excise tax on a transaction under 507-888 under this Court's precedent in Williams. Just like the uninsured motor vehicle exaction in that case, the shared responsibility payment applies to individuals who are uninsured. Even though the opponent would like to say that this is an inaction, so it therefore can't be a transaction. This is very similar to the exaction at issue in Williams. If the Court reaches the issue, we do not think that there's any meaningful distinction between this case and the Williams case. I'll reserve the rest of my time for rebuttal. Thank you very much. Let me ask Judge Traxler, do you have any questions you wish to ask of her? No, thank you. Mr. Brewer. Good morning, Your Honor. William Brewer here representing the appellee. I'm going to jump right into the discussion Judge Niemeyer was having. It does appear to me, before I get to functional analysis and all of that, which I intend to cover time allowing, that the Supreme Court did stray in Sebelius from the principle that the terminology employed by Congress in describing an exaction is not determinant of its application in a statutory sense. I would point to this court's decision in the Liberty University case, in which this court held, contrary to Supreme Court, that the Anti-Injection Act did prevent the challenge to the ACA. That analysis by Judge Motz really kind of goes through the kind of functional analysis, whether it's a tax or a penalty, and found that it was in fact a penalty, excuse me, it was in fact a tax, and therefore was covered by the Anti-Injection Act. And as Judge Niemeyer pointed out, the Supreme Court said no, no, no, no, no. For purposes of Congress passes a statute, says it's a penalty, there's an Anti-Injection Act that says that you can't enjoin taxes. They use the word penalty, the Anti-Injection Act doesn't apply the penalty. That's what Congress has done. But how do you counsel, how do you deal with the fact that when the Supreme Court was addressing this precise question, and that is, what is the SRP that came to the conclusion that it was attacked? And it was an explained, it was a decision that was explained at great length. They went into a whole lot of different reasons why it's a tax. Those same reasons are present here. Just because the context is one of bankruptcy, it doesn't change the fact that when the Supreme Court addressed what the SRP was, it says it looks like a tax and then it goes into the fact it's paid into the Treasury at the time that people file their tax returns. It raises revenue for the government. It doesn't even apply to people who don't have to file federal impasses. It's determined by questions such as taxable incomes, number of dependents, joint filing status, which is what a tax depends on. It just seems to me that you are asking us to get on some thin ice and become perilously close to simply rejecting what the Supreme Court said in the Sibelius case. I understand that's a controversial decision. I don't particularly like aspects of it, okay? But for the system to work, we can't be nudging ourselves in a position of non-acquiescence or semi-defiance or whatever. It just puts me in a place where I'm not comfortable being. Your Honor, I agree with you. Whether one likes Sibelius or doesn't is a pronouncement by the United States Supreme Court. To help you deal with your dilemma, how do I rule in favor of the affilee in this case without getting in the face of the United States Supreme Court, I submit to you it's because the issue here is different than the one for the Supreme Court. The issue for the Supreme Court is what is the constitutional power of Congress? And the law is that Congress construes statutes to uphold their constitutionality where possible. So there is the presumption there, the lean toward finding a construction of a law that upholds its constitutionality. In determining whether the SRP is a tax for purposes of the bankruptcy code has a totally different presumption. Priority statutes are tightly construed so as not to give priority from one predicate over another. That's the Supreme Court in our delivery case. And therefore, it is a totally different approach. And again, going back to our previous discussion, Supreme Court says it can be a tax for constitutional purposes, but a penalty is what Congress called it and that's what it is for statutory purposes. And I submit to you, therefore, to say that we can find it to be not a tax for purposes of the bankruptcy code in no way indicates that the Supreme Court was wrong in determining that it was in fact a tax for constitutional purposes. I think you simply do that. But the Supreme Court adopted a functional analysis. We as well have adopted a functional analysis in our own opinions. And I don't understand why the same functional analysis would not carry throughout that we are supposed to look at the functional analysis rather than labels to determine what this is. And it just seems to me, oh, we use a functional analysis in this context to jump to this conclusion. We use a functional analysis in this context to jump to the other conclusion. It does seem to me that if you use a functional analysis, which our precedents do, that you want to follow through and be consistent with that. And the functional analysis leads in only and nobody is really contending otherwise. Your Honor, let me run through that functional analysis as this court laid it out in Williams v. Motley in New Neighborhoods. And let me try to persuade you that functional analysis as scored by this court does not result in finding this to be a tax. Those criteria are an involuntary pecuniary burden laid upon individuals for property imposed by the authority of the legislature for public purposes, including the purpose of defraying expenses of government undertakings authorized by it under the police power or the taxing power of the state. I submit to you of those four criteria, three of the four really do very little to distinguish a tax from a penalty. You know, I think that argument is probably going to lead you down a rabbit hole. It's a it seems to me while we can argue about what the functional analysis is, the Supreme Court did apply the functional analysis for constitutional purposes of this very payment. And it concluded based on numerous reasons that it explained that it was within the taxing power. So I'm not sure we can overrule if you're get to the point where you're arguing the functional analysis here should be different from what's in Sebelius. I think you're you're asking us to really play with the Supreme Court's holding. The Supreme Court held explicitly explicitly that for purposes of the constitutional taxing power, this was a tax under the functional analysis. My questions were not focused on whether the functional analysis of our motley or any other opinion is the correct version of it. My point was the court made clear it was addressing the scope of the constitutional power and the constitutional power could not be limited to how Congress labels it. That's what the court explained. And they even concluded the taxing power that this was authorized under the taxing. But then it made pretty clear that if this is a question of congressional enactments to to congressional enactments, then we have to abide by what Congress said. And but I don't think we get anywhere by having a debate or an argument about the functional analysis of this particular payment. Supreme Court conducted the functional analysis. They did the functional analysis determining the constitutionality. I understand, but that doesn't change the term. A functional analysis is a type of analysis. In the functional analysis, you look over substance, over form, substance, over label. And so the Supreme Court said looking over substance, it's a tax because. And then they explained why. I submit to you, Your Honor, that in fact. Based on presumptions, you have cases that are very close and a close case. Is it a tax? Is it not a tax? For purpose of constitutional power, we don't lean toward calling it a tax. The functional analysis is not some kind of chameleon that just shifts its colors from here to there. We are dealing with the same payment, a shared responsibility payment that the Supreme Court said was a tax. And we can't just wish away the Supreme Court's holding and say, well, they were doing that for constitutional purpose. Because I don't think if you adopt a functional analysis, I can't see it shifting around when we're dealing with that same payment. You know, I don't like this particular analysis, but it's not a chameleon. It doesn't, when you're dealing with the very issue that we're talking about here. Your Honor, I submit it's not the very issue. There, Congress's taxing power, there are within the General Revenue Code, a number of penalties for late filing of tax returns and that kind of thing. That's clearly within Congress's authority under its taxing authority to levy against people. However, those are clearly not taxes for purposes of the United States Bankruptcy Code. In this very case, the IRS proof of claim includes penalties that meet all those functional analysis. They are levied by the IRS. They show up on tax returns. They're collected by the IRS like taxes, but they are penalties. So, there's the issue of what is within the taxing authority and what is a tax for purposes of Section 507A8 are in fact different as the Zaborski case held that. Now they ruled in favor of the IRS. That's an interesting argument. Let me ask you this. If the IRS makes a claim for past due taxes in a bankruptcy case and includes in that claim penalties it has imposed, your argument is the taxes get priority, but the penalties don't. Exactly. Is that in practice? In other words, if they come in and the taxpayer doesn't pay a tax bill and has $100 in taxes due and $50 in penalties, and so the IRS comes in and claims $150, doesn't that whole bill get priority? No, Your Honor. Only the $100. The $50 penalty you described is a general unsecured non-priority claim. And that's, you look at the proof of claim, I think it's only... Well, then your argument is, then your argument I gather has some, quite has some support because while the penalty is authorized to be imposed by the IRS under the taxing power, under the Constitution, it is still a penalty for purposes of statutes if the Congress makes a distinction between penalties and taxes. Exactly, Your Honor. I understand. But this has none of the characteristics of a penalty. It doesn't even require a finding of scienter. And normally when we apply, when we have penalties, they have some sort of scienter. But that's done... And this is not to penalize anything. It's not a punitive measure. It's not a fine or imprisonment or whatever. Any more than not paying my normal taxes is a fine or imprisonment. I would like to think that when I file my tax returns in the SRP that I was paying a tax along with the other taxes I'm paying. But this doesn't even have the characteristics of a penalty. Your Honor, again, getting back to my previous argument about late filing of a tax return, that's not unlawful. You pay extra money to the government for having done so. The government wants to deter one from not filing tax returns on time or from filing on time. Therefore, there's a penalty for that. And it's recognized there about one as a penalty. Well, this is not an untimely tax return. This is something that's, you know, along with 20 other things is part of the tax returns, a lawful part of the tax return. But what I'm saying, you're complaining the issue of how this act by Congress to deter certain actions, failure to get insurance, how it's collected from what it in fact is. I will submit to you that the appellant's duty is to prove to this court it has the burden that this is a tax. You can say then it's not a penalty, but I don't have to prove it's a penalty. I have to prove it's not a tax. And I will submit to you that if you were to find this is a pecuniary burden placed upon individuals by Congress for its individual failure to get tax, to get insurance as required by the individual mandate in the Affordable Care Act, then you can call it that. You can just call it a deterrent, whatever, but it's not a tax. It was not a tax. Appellee prevails in this case. You can say, well, I don't want to call it a penalty because it is in fact, even though Congress called it a penalty, because they don't throw people in jail for it or do bad things to them for it. They just make them pay this money on their tax return. But I submit to you it is still for the purpose of deterrence. When I get to that functional analysis, I will submit to you it's the third one that is the most important. The first one says that it's an involuntary pecuniary burden. Well, that's a penalty. I mean, that doesn't distinguish a tax from a penalty imposed by the legislature. That's the second. Well, that's, you know, penalties are imposed by the legislature. But there's just an element of infriduity here. When you get something that walks and talks and quacks like a duck and the rest, and then you sit here and you tell me it's not really a duck. And you tell me that something the Supreme Court has said is a tax. And it sure looks like a tax to me. And then I'm being told, oh, it's not at all what it seems to be. I mean, I'm just incredulous that somebody would sit and tell me that what's transparently a tax is not really a tax. It's like blue is not blue and red is not red. And the rest and I'm, you know, I'm asked to stare reality in the face and to walk away from it. I have some merit to say that it does not walk and talk like that tax. The main purpose of a tax is the third factor in the functional analysis. And that is the pecuniary burden placed upon individuals to defray the expenses of government. There is nothing in the Affordable Care Act. And if you read it totally and purpose, it raises revenue. It's what, excuse me, raises revenue, which is what a tax does. And the Supreme Court, you know, Chief Justice Roberts summarized it by saying Congress didn't mean to create four million outlaws or whatever it would be. And if it was a tax, you don't create four million outlaws, whereas if it's a penalty of some kind, you do. It's the difference between what is stigmatic and what is not. And as I say, I thought the Chief Justice summarized the point very, very well. My time is up. May I respond? You can make a concluding statement. I'm happy to hear you. The fact that it comes down to the issue of whether penalty has to be an unlawful act. And I submit to you, it does not. It can be a something that the Congress wants to discourage. Well, why isn't if it's a mandate and you have to buy insurance, buy, shall buy insurance? Why isn't it unlawful if you fail to comply with that? Well, I guess it depends on how you maybe maybe it is unlawful. It's just not illegal. I guess there's no criminal. You know, it is in violation of what Congress has said to do. I agree with that. I mean, as this court knows, the enactment of this law has been controversial from when it was first proposed through reading today. And so it appeared to me Congress was attempting to soften the blow by the way it described it. Clearly, it says we want people to get insurance required to get in. We want to increase insured food. Thank you, counsel. Thank you very much. We've given you some extra time. And if either of my colleagues has any further question of you, I'm happy to defer. Thank you, Your Honor. Judge Niemeyer, Judge Straxley, do you all have anything further? OK. Welcome to your rebuttal. In Sotelo, the Supreme Court was asked to decide whether something that was called a penalty, like the shared responsibility payment here, was a tax entitled priority. Supreme Court held it was. It did so by applying a functional test. The Supreme Court in NFIB cited Sotelo and used that test to come to its same conclusion that the shared responsibility payment, while labeled a penalty, was a tax. That is the very issue before this court is what is otherwise called a penalty, a tax, because it is a functional examination. My biggest difficulty, I think I understand that. I follow that clearly. The functional analysis seems to be logical, but it seems to me there is a tension in the conclusion that determine the scope of the taxing power. And the court clearly was addressing the taxing power under the Constitution. It applied a functional analysis to determine whether Congress could do it or not, even if they called it a penalty, if it looked like a tax or fell within the taxing power. But then the court says, when we're looking at enactments of Congress and they make a distinction between a tax and a penalty, we go along with their distinction. And that's in part two. And they said, regardless of whether it's properly labeled, it could not have said that under the Affordable Care Act because they were improperly labeled. But they said, for purposes of congressional statutes, when one statute versus another, Congress can define them however it wishes. And if it calls it a tax, it's a penalty. I find a tension in that type of approach because I understand the taxing power is a different source. That's a congressional source. And you may want to go more broadly to authorize the government to raise monies and enforce penalties and that type of thing. But when it comes to congressional enactments and they label something a tax, whether it's a tax or not, it seems to me they sort of suggested by implication that we don't go with a functional analysis, we go by the label. How do we square that? Every case that has come after NFIB v. Sebelius on this issue before this court, whether or not the shared responsibility payment is entitled to priority, has applied the functional test. No other court has had that concern. In fact, when the Third Circuit recently decided this exact issue, while it held that Sebelius was not controlling. Did they look at part two and analyze part two of Sebelius? They did, Your Honor, because they said it was persuasive to its own analysis. And in fact, when it answered every aspect of its functional examination in the Third Circuit, which in fact is asked more questions than this court typically does for bankruptcy priority, it answered each of those factors by turning to Sebelius. Would we be creating a square conflict with the Third Circuit here? You would, Your Honor, and you'd be creating conflict with every other circuit that has had a district court or bankruptcy court that has applied a functional test. All right. So in other words, we're going to be asked to be an outlier. That is what we are being asked to do. That's right, Your Honor. And this court should not take the bait. This court should hold because of Sebelius. And even if Sebelius didn't control here, the functional test requires this court to reverse the district court. This is a tax. It is a tax measured by income. And this court also wants to reach the excise tax issue. It is also an excise tax on a transaction. The district court got it wrong on all three funds. Not only did it fail to apply the functional test that the Supreme Court required of it and this court required of it, it failed to recognize that this is measured by income, even though it may not be measured by income alone. That's not the standard. 507-88A says measured by income. This is very clearly a tax measured by income, similar to what the Third Circuit recently held in Siza Court. Is there another court of appeals that has a parallel with the Third Circuit? The only other court of appeals to address the issue was the Fifth Circuit. And the income tax was the measured by income argument was not before it. So it held that that issue had been waived. So it had not addressed it. So it's only one circuit, Third Circuit? So far, Your Honor, yes. For the reasons I've discussed, I would like this court to consider the burdens that it is required to follow, not just its own precedent, but the Supreme Court's precedent. And we ask that it reverse. All right. We thank you both for your presentations. And we will proceed to go directly into our next case.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, William B. Traxler Jr.